J. E. BARRON PLASTICS, INC., AN OHIO CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4874-65. Filed March 24, 1967.

*George H. Palmer*, for the petitioner.
*Conley G. Wilkerson*, for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency in petitioner's income tax for its fiscal year ended June 30, 1962, in the amount of $1,896.13.

The sole issue for our determination is whether petitioner "acquired" a plastics injection molding machine after December 31, 1961, so as to be entitled to an investment credit under section 38.[1] It is conceded that petitioner is otherwise entitled to the credit in the amount of $1,954.77.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

The petitioner is an Ohio corporation with its principal place of business at 100 Barron Drive, Cincinnati, Ohio. Petitioner is primarily engaged in the manufacture, fabrication, and sale of plastic products, including those that are produced by what is known as the injection molding process.

---

[1] All references are to the Internal Revenue Code of 1954.

Petitioner filed an original and an amended Federal income tax return for its taxable year ended June 30, 1962, with the district director of internal revenue, Cincinnati, Ohio.

On November 9, 1961, petitioner ordered a plastics injection molding machine from the H-M-P Division of the Koehring Co., Mount Gilead, Ohio (herein referred to as HPM) and on its order form specified "our pick up" under the heading "Shipping Instructions."

The pertinent terms and conditions of the arrangement with HPM were as follows:

The prices quoted herein are net f.o.b. Company's [HPM's] factory, Mount Gilead, Ohio, unless otherwise specified herein.

\* \* \* \* \* \* \*

Equipment shall be installed by and at the expense of the Purchaser unless otherwise expressly stipulated in the proposal.

\* \* \* \* \* \* \*

The Company shall deliver the Equipment to the Purchaser f.o.b. carrier, Mount Gilead, Ohio, or to a transportation facility furnished by the Purchaser at Mount Gilead, Ohio, and the Purchaser assumes all responsibility and risk of loss in respect to said Equipment subsequent to such delivery.

\* \* \* \* \* \* \*

Erecting Supervisor: With the Equipment proposed herein, the Company will furnish the services of a factory trained erection supervisor for a period of time as stated herein, exclusive of traveling time, without extra charge, for the purpose of checking final erection, instructing operators and starting the Equipment. Such services include one (1) round trip from the factory or such base point as the Company may determine, and include traveling and living expenses covering this specific period of service. Where the Purchaser desires services of erecting supervisor in excess of the time stated above, then a charge will be made for such services in accordance with terms and conditions of sale noted herein.

If the Purchaser desires the assistance of Company supervisory personnel in connection with the installation of the Equipment, the Purchaser shall prepare and be responsible for foundations ready for installation, and the Equipment shall be unloaded in a convenient place in readiness for erection before sending for such personnel. The Purchaser shall furnish all labor, material and appliances necessary for such erection and shall make any changes in buildings or fixtures required by such installation.

\* \* \* \* \* \* \*

All traveling and living expenses of service personnel from time of departure until return shall be paid for by the Purchaser.

Petitioner issued pickup instructions to the Fenton Rigging Co. of Cincinnati, Ohio (herein referred to as Fenton), which contained the following note:

You are to pick up the above two pieces of equipment, deliver to our Factory, place each in position as we instruct, and level each as needed. We will advise when you are to pick-up each piece shown above and deliver to us.

Fenton is unrelated to petitioner and is primarily engaged in the business of contracting, for the use of its employees, machinery and

equipment for the purpose of delivering and placing in position heavy machinery and equipment. Fenton performs services under private contracts and is not a public carrier regulated by any public utility commission.

The machine was physically picked up by Fenton from HPM at Mount Gilead, Ohio, on Friday, December 29, 1961. The bill of lading consigning the equipment to petitioner and the invoice with respect to this machine were issued by HPM on December 29, 1961.

The machine was delivered to petitioner's plant at Cincinnati, Ohio, by Fenton on Tuesday, January 2, 1962, where Fenton placed it in position and "leveled" it.

Mount Gilead is between 80 and 100 miles from Cincinnati.

On January 4 and 5, 1962, two employees of HPM checked the installation of the machine on petitioner's premises, instructed petitioner's employees with respect to the proper operating procedures, and otherwise placed the machine in operating condition. The machine was not placed in operating condition until January 5, 1962.

### OPINION

The issue herein is somewhat different from that involved in *Madison Newspapers, Inc.*, 47 T.C. 630 (1967), decided simultaneously herewith. In that case, we were concerned with the nature of the property involved—i.e., the *what*. In this case, our concern is with the time of acquisition—i.e., the *when*. Nevertheless much of what we said in *Madison Newspapers, Inc.* is equally applicable herein. We see no need to cover the same ground again.

Petitioner's entire argument rests upon the proposition that even though it may have had title to the plastics injection molding machine on December 29, 1961, Fenton was an independent contractor and therefore it did not have the necessary "physical possession, or control" until January 2, 1962, at the earliest. Respondent asserts that petitioner had title on December 29, 1961, that Fenton was the agent of petitioner, and that consequently Fenton's possession and control of the machine constituted that of petitioner. He asserts that, under these circumstances, petitioner had "physical possession, or control" within the meaning of section 1.48–2(b)(6), Income Tax Regs., on December 29, 1961, and therefore the property was not "acquired after December 31, 1961," as required by section 48(b)(2). We agree with respondent.

To be sure, the plastics injection molding machine could not have been used by petitioner in its business prior to January 2, 1962, when it arrived at its business premises in Cincinnati. But we think this consideration goes more to the issue of when the property was "placed

in service," the determinant of the taxable year in which a taxpayer actually receives the credit to which it is otherwise entitled. Sec. 46(c).

It cannot be denied that, as between the petitioner and HPM, petitioner acquired the plastics injection molding machine when it was picked up by Fenton on December 29, 1961. Granted that Fenton may have been an independent contractor in the sense that it was not subject to the detailed instructions of petitioner as to the manner of delivery and installation, the fact is that Fenton was the designee of, and acted on behalf of, the petitioner in the performance of its responsibilities and hence was to this extent petitioner's agent. It is significant that HPM assumed no responsibility for installation, beyond furnishing an erection supervisor for a limited period of time solely for the purposes of "checking final erection, instructing operators and starting the Equipment"; that its warranty was confined to defects in material and workmanship with respect to equipment of its own manufacture; and that the agreement between petitioner and HPM expressly provided that "Equipment shall be *installed by* and at the expense of *the Purchaser*" and contained no provision for acceptance by petitioner after testing. Thus the situation herein is unlike that which obtained in *Madison Newspapers, Inc., supra.*

Under the foregoing circumstances, we conclude that petitioner had "physical possession, or control" on December 29, 1961.[2] We reach this conclusion on the substance of the total situation as presented to us and without dissecting the technicalities of local law involving "title," "possession," or "control."[3]

Reviewed by the Court.

*Decision will be entered for the respondent.*

[2] In view of this conclusion, we need not consider the significance, if any, of the comma in the regulations which raises the question whether the word "physical" modifies the word "control."

[3] As a consequence, no inference should be drawn as to whether the result would necessarily have been different if the plastics injection molding machine had been picked up by a trucking concern designated by HPM and not delivered by it to petitioner's premises until Jan. 2, 1962.