306

ROBERT E. CATRON AND MAXINE CATRON, PETITIONERS *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT

EUGENE D. CATRON, PETITIONER *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket Nos. 2115-66, 3862-66. Filed May 16, 1968.

*Frank F. Catron*, for the petitioners.
*Larry K. Hercules*, for the respondent.

OPINION

HOYT, *Judge:* Respondent determined a deficiency against peti-
tioners Robert E. and Maxine Catron, docket No. 2115-66, in the
amount of $689.25 for the taxable year 1962. Respondent also deter-
mined a deficiency for the same year against petitioner Eugene D.
Catron, docket No. 3862-66, in the amount of $562.53.[1] The cases have
been consolidated for all purposes. The issue in both docket numbers
is the same—i.e., whether an apple storage and packing facility erected
by the petitioners, or portions thereof, qualify as "section 38 property"
under the Internal Revenue Code of 1954.[2]

---

[1] "Overassessments" were determined as to petitioners in both docket numbers for the
year 1963. However, by prior order of Court herein it was decided that we are without
jurisdiction over the year 1963 because no deficiency was determined for that year.

[2] Unless otherwise noted, all statutory references herein are to the Internal Revenue Code
of 1954.

All of the facts have been stipulated, and along with accompanying exhibits, are incorporated herein by this reference and adopted as our findings.

Petitioners Robert E. Catron and Maxine Catron are husband and wife with residence in Kansas City, Mo. For the taxable year 1962, they timely filed a joint income tax return with the district director of internal revenue for the western district of Missouri. Petitioner Eugene D. Catron is an individual with residence in Lexington, Mo. For the taxable year 1962 he also filed an individual income tax return with the district director for the western district of Missouri. Maxine Catron is a petitioner herein solely by reason of having filed a joint return with her husband. Accordingly, she will not hereinafter be referred to as petitioner. The plural usage, "petitioners," shall have reference to petitioner Robert E. Catron and petitioner Eugene D. Catron, who are brothers.

The Catron brothers were engaged as partners in an apple-farming venture near Nebraska City, Nebr., during the taxable year 1962. During this year the partnership purchased and erected a metal Quonset-type prefabricated structure for use in the storing, selection, and packaging of apples. The Quonset structure, hereinafter referred to as the facility, or the storage facility, is marketed as the "Behlen Curvet" by its manufacturers and/or distributors. It is specifically intended for agricultural uses, including the storage of commodities such as grain, and comes in various lengths and widths available as ordered.

The facility erected by petitioners rests on a concrete slab. It is 120 feet long and 40 feet wide, with the entire southernmost one-third of its length (40 feet) being a separate cold-storage area. The one-third of the facility which is refrigerated is separated from the rest of the interior area by a partition from floor to ceiling in which there is only one opening, a refrigerator door into the storage facility; it is insulated with an applied spray insulation which is at least 2 inches in thickness. This insulation is in turn covered by a heavy coat of aluminum paint. The remaining two-thirds of the structure is not refrigerated but is insulated with a spray insulation approximately 1 inch in thickness. Within this portion of the facility apples are washed, graded, sorted, packed, and a small portion are stored until their sale. The refrigerated area is used for storage only. It is in effect a room-size refrigerator suitable only for storage purposes.

During 1962, generally 10 persons were employed at one time within the facility, working for the most part in the nonrefrigerated area. They performed the following duties: One man emptied boxes of apples onto a conveyor belt which is the heart of the Catron brothers'

sorting and selection system. This electrically operated belt or grader lies basically along one lengthwise wall of the nonrefrigerated area and is used for the sorting, culling, and grading of apple crops grown in petitioners' orchard; the device is approximately 60 feet in length and rounds a corner for an additional 15 feet. Two women sorted spoiled apples from the grader belt. One man formed previously cut cardboard into boxes. Four women transferred the apples by grade or size from the working line into the boxes, and two men stacked the packed boxes, either in the nonrefrigerated area or in the refrigerated room by using forklifts.

Along the other lengthwise wall, opposite the grader-conveyor belt in the nonrefrigerated area, there is storage space available for the stacking of empty boxes, bags, bushels, and packaging supplies during the season or seasons, when apples are graded and packed. When the sorting and packing of apples are completed for the year, this area is available for common or dry storage of apples.

In the center of the nonrefrigerated area and running lengthwise is an aisle separating the dry-storage area along one wall from the grading and sorting area along the opposite wall. It is in this space that the persons who handle and package the apples dispose of the apples coming off the grader-conveyor.

A large portion of the apples which have been processed are stored in the refrigerated storage area, and many of these are later shipped through interstate commerce. During 1962 petitioners processed, graded, and packed their apples pursuant to standards set by the Agricultural Marketing Act of 1946, as amended.

On their respective returns for the year 1962, petitioners claimed the investment credit provided by section 38 for various partnership properties. They computed the credit based, *inter alia*, on the total cost of the apple selection, packing, and storage facility described above. Respondent has disallowed the portion of the claimed credit based upon the cost of the entire facility described and its insulation. His disallowance is based upon the simple proposition that the facility in question is not property subject to the investment credit, or so-called "section 38 property." The parties have stipulated that the only issues in these cases are whether the structure and its applied insulation are section 38 properties.

On brief, petitioners contend that the cold-storage refrigeration area of their facility constitutes a storage facility under section 38 and that the nonrefrigerated area of the facility constitutes a facility for the purpose and use of extraction under section 38. They also contend that their arched prefabricated-steel Quonset structure is not a building because it has no walls nor a roof; "it is impossible to determine where the sides end and the roof begins." Finally, they urge

that all of the insulation applied to the inside walls of the building itself qualifies as section 38 property because it is not a structural component of a building even if the Quonset itself is a building of some sort.

Respondent argues that a structure is either a building or section 38 property "but not partly both." He avers that buildings and their structural components do not qualify for the investment credit and that petitioners' entire structure—refrigerated storage room, nonrefrigerated portion, insulation and all—cannot qualify. It logically follows, he concludes, that rooms or areas within a building do not qualify as section 38 property, and that there can be no allocation of the credit based upon a portion of the cost of a building even if these areas constitute storage facilities.

Section 38 property is defined by section 48(a)(1), and one of the few clear rules stated by section 48(a)(1) is that buildings and their structural components do not qualify as section 38 property. Section 48(a)(1) provides, in pertinent part, as follows:

SEC. 48. DEFINITIONS; SPECIAL RULES.

 (a) SECTION 38 PROPERTY—
  (1) IN GENERAL.—Except as provided in this subsection, the term "section 38 property" means—
   (A) tangible personal property, or
   (B) other tangible property (*not including a building and its structural components*) but only if such property—
    (i) is used as an integral part of manufacturing, production, or extraction or of furnishing transportation, communications, electrical energy, gas, water, or sewage disposal services, or
    (ii) constitutes a research or storage facility used in connection with any of the activities referred to in clause (i) * * *
  [Emphasis supplied.]

The respondent has been given broad authority to carry out the purpose of the investment credit provisions by promulgating necessary regulations. Sec. 38(b), I.R.C. 1954. Respondent's regulations are therefore entitled to great weight in interpreting the statutory definition of section 38 property. Unfortunately, they are not of material help to us here, and to date there have been few judicial interpretations of either the statute or the regulations. The cases we have found deal only tangentially with the categories of property which qualify from the generic standpoint. See *Schuyler Grain Co.*, 50 T.C. 265 (1968); *Frank J. Evans*, 48 T.C. 704 (1967), on appeal (C.A. 9, Nov. 13, 1967); *J. E. Barron Plastics, Inc.*, 47 T.C. 638 (1967), on appeal (C.A. 6, June 5, 1967); *Madison Newspapers, Inc.*, 47 T.C. 630 (1967).

In amplification of the statutory exclusion of buildings and their structural components, respondent has promulgated section 1.48-1 (e)(1), Income Tax Regs., which under the circumstances of this case

must be read in conjunction with section 1.48–1(d)(5) of the regulations defining research and storage facilities, and section 1.48–1(d)(2) of the regulations defining "other tangible property" used as an "integral part of manufacturing, production, or extraction." If the non-refrigerated two-thirds of the facility in question is to qualify as section 38 property, it must do so either as "tangible personal property" or as "other tangible property (not including a building and its structural components)" used as an integral part of manufacturing, production, or extraction or which constitutes a research or storage facility (sec. 48(a)(1)(B)(i) and (ii), *supra*). We conclude that if the refrigerated storage facility, which is one-third of the total area of the Quonset-type structure, is to qualify at all for the investment credit, it must do so as other tangible property constituting a research or storage facility (sec. 48(a)(1)(B)(ii)).

Petitioners' basic difficulty lies in the fact that the statutory concept of "building" on the one hand, and "other tangible property" which "constitutes a * * * storage facility" on the other hand, are mutually exclusive. That is, even though a given tangible property constitutes a storage facility, or is used as an integral part of manufacturing, production, or extraction, still the property does not qualify as section 38 property if the property is also "a building." See sec. 48(a)(1)(B) of the Code and the sections of the regulations referred to above.

Section 1.48–1(e)(1), Income Tax Regs., defines "building" in terms of common experience and understanding. The gist of the definition is that a structure in question is a building if it encloses a space within its walls, is covered by a roof, and has as its purpose the furnishing of shelter or housing, or of working, office, parking, display, or sales space. The regulatory section provides in pertinent part as follows:

(e) *Definition of building and structural components.* (1) Buildings and structural components thereof do not qualify as section 38 property. The term "building" generally means any structure or edifice enclosing a space within its walls, and usually covered by a roof, the purpose of which is, for example, to provide shelter or housing, or to provide *working*, office, parking, display, or sales space. The term includes, for example, structures such as apartment houses, factory and office buildings, warehouses, barns, garages, railway or bus stations, and stores. [Emphasis supplied.]

There would seem to be relatively few structures not falling within the scope of this broad definition. Yet the statute itself (in the case of research and storage facilities), and the regulations (in the case of structures which are essentially items of equipment) certainly suggest that various structures which might arguably be considered buildings in a generic sense are not always buildings within the meaning of the statute. This is simply to say, with respect to storage facilities, that while a storage facility does not qualify under the statute if it is a "building," the term is specifically included by the statute in its

definition of section 38 property, and one finds it difficult to conceive of many storage facilities which are not, in some sense, buildings. We cannot attribute to the Congress the inclusion of a nugatory provision—in this instance, the term "storage facility."

The regulations resolve the dilemma to an extent by engrafting a functional test which limits slightly the broad scope of our common understanding of "building." Thus, under section 1.48–1(e)(1) of the regulations, *supra*, the basic definition of "building" is a structure with walls and a roof, but a "building," it is declared, typically provides space for certain purposes. The enumerated purposes, as mentioned, are the furnishing of shelter or housing, or of working, office, parking, display, or sales space. These purposes are exemplary and not all-inclusive. But, with the definition of "building" limited somewhat to the functions just stated, respondent's regulations acknowledge that certain structures which are storage facilities and are not used for the stated purposes or functions, *do* qualify as section 38 property. See secs. 1.48–1(d)(5) and 1.48–1(e)(1), Income Tax Regs. In a recent ruling respondent has specifically recognized that "the definition of the term 'building' for investment credit purposes is stated in terms of function rather than physical appearance." Rev. Rul. 68–209, 1968–1 C.B. 16.

Section 1.48–1(d)(5) of the regulations provides as follows with respect to storage facilities:

(5) *Research or storage facilities.* If property (other than a building and its structural components) constitutes a research or storage facility and if it is used in connection with an activity specified in subparagraph (1) of this paragraph, such property may qualify as section 38 property even though it is not used as an integral part of such activity. Examples of research facilities include wind tunnels and test stands. Examples of storage facilities include *oil and gas storage tanks and grain storage bins.* Although a research or storage facility must be used in connection with, for example, a manufacturing process, the taxpayer-owner of such facility need not be engaged in the manufacturing process. [Emphasis supplied.]

The subparagraph just quoted is the only portion of the Investment Credit Regulations specifically dealing with storage facilities. These same examples, however, are included under the section of the regulations defining "building" (1.48–1(e)(1), *supra*), as examples of the regulatory exception for a structure which is essentially an item of machinery or equipment, or which is so closely combined with the "machinery or equipment which it supports, houses, or serves that it must be replaced, retired, or abandoned contemporaneously with such machinery or equipment." The examples of these mechanical sorts of structures appear in the last sentence of section 1.48–1(e)(1) of the regulations. The only examples provided are *oil and gas storage tanks, grain storage bins,* silos, fractionating towers, blast furnaces, coke ovens, brick kilns, and coal tipples.

The significance of this second inclusion under section 1.48–1(e)(1), a significance we deem noteworthy, is that oil- and gas-storage tanks and grain-storage bins are mentioned in the regulations under two different conceptual headings. First, they are mentioned as examples of the *statutory* term, "storage facilities." Sec. 1.48–1(d)(5), Income Tax Regs. Then they appear in a *regulatory* exclusion or exception to the broad definition of "building," which exclusion or exception was apparently conceived to allow the investment credit for structures which are essentially machinery or equipment, or which are closely combined with items of machinery or equipment. Sec. 1.48–1(e)(1), Income Tax Regs.

We find nothing in the committee reports, the statutory term "storage facility," or the only regulation specifically explanatory thereof (sec. 1.48–1(d)(5)) to suggest that before a storage facility can qualify as section 38 property it must also be essentially an item of machinery or equipment, or be so closely combined therewith that it must be retired contemporaneously. We think qualifying storage facilities need not be automated. See H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 405, 517; S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 707, 860.[3]

Petitioners in the instant case present two separate concepts under which they argue that they are entitled to the credit.[4] They argue: (1) That the structure is wholly or partially a storage facility under section 48(a)(1)(B)(ii), I.R.C. 1954, and section 1.48–1(d)(5) of the regulations; or (2) that the structure is "other tangible property" under section 48(a)(1)(B)(i) of the Code, which is excepted (as being essentially an item of machinery or equipment) from the exclusion of buildings by section 1.48–1(e)(1) of the regulations.

With respect to the nonrefrigerated two-thirds of the facility, we reject this second argument out of hand. Petitioners argue strenuously that the nonrefrigerated two-thirds is a facility of "extraction" as if facilities of extraction were some special category exempted from the general statutory prohibition against the qualification of buildings. No such special category exists. No property whatever may qualify under section 48(a)(1)(B) if that property is a building even if we acknowledge that apple sorting, selection, grading, and packing amount to "extraction," which we do not. The only route by which the

---

[3] No examples of qualifying storage facilities are given in the committee reports.

[4] We regard the make-weight argument mentioned at the outset that the whole facility is not a building because it has no clearly delineated walls and roof as totally without merit. The applicable provision of the regulations, sec. 1.48–1(e)(1), furnishes only a general description which *does not attempt to define in exact terms the outer limits of what may properly be categorized as a "building." Furthermore, sec. 1.48–1(e)(1) in its general definition states only that structures which are buildings are *usually* covered by a roof. There is no suggestion whatever that a building *must* provide the traditional clear delineation between walls and roof. We likewise do not consider that the whole structure is tangible personal property and petitioners do not so contend.

nonrefrigerated two-thirds could conceivably qualify as "other tangible property * * * used as an integral part of * * * *extraction*" is through the regulatory exception for structures which are essentially items of machinery or equipment, or which are closely combined therewith. We find nothing in the record to suggest this circumstance.

It is clear, even from the meager record before us, that the nonrefrigerated two-thirds of the facility is an adaptable area of a structure which provides general working space for petitioners' business of producing and selling apples. It is equally obvious from the general uses to which the nonrefrigerated portion was put that it cannot qualify as a storage facility under section 48(a)(1)(B)(ii) of the Code and section 1.48–1(d)(5) of the regulations. We therefore must conclude that as to the nonrefrigerated Quonset sorting and grading structure, respondent's denial of the credit must be sustained.

The more difficult question of the qualification of the refrigerated structure remains to be dealt with, however. This refrigerated space is used solely for the cold storage of apples, for which it was designed and erected. It has no other use or purpose. Petitioners argue strenuously that the refrigerated room qualifies as a storage facility under the provisions just cited.

Respondent's position is that no structure may qualify as a storage facility if it provides working space. He contends that the structure becomes a "building" under section 1.48–1(e)(1) of the regulations, *supra.* On brief, respondent is apparently somewhat reluctant to argue directly and forcefully the substantive question of whether the refrigerated room, *considered alone*, qualifies as a storage facility. He argues that working space is provided within the facility as a whole, and there can be no allocation of costs within the facility so that the cold-storage room qualifies while the nonrefrigerated two-thirds does not. In short, he urges that portions or areas of a structure may not qualify separately.

We regard this position as primarily procedural or administrative, and not substantive with respect to the definition of "storage facility" as contrasted with that of "building." Respondent submits that the committee reports are silent on whether an allocation may be permitted, and that if such an allocation is permitted, broom closets and supply rooms within a nonqualifying building might arguably qualify, thus creating burdensome administrative problems. We conclude that an allocation is permissible if the refrigerated portion of a structure qualifies substantively as a storage facility.

We also conclude that respondent has overstated his anticipated administrative burden. It is not mere semantic sophistry to state that if a portion or section within a building qualifies substantively as a storage facility, then that area no longer partakes of "building" but is

generically a "storage facility." Respondent will not be faced with the prospective qualification of broom closets and supply rooms. It is clear from the examples in his own regulations that the ordinary storage area will not qualify as a storage facility under section 48(a)(1)(B)(ii) of the Code. We believe the statutory provisions contemplate specialized facilities designed for the homogeneous storage of commodities or fuels. We think it beyond cavil that general supply rooms and broom closets are not in this category. In short, there is a narrow class indeed of separable storage areas which can even arguably qualify, and this class is not too difficult to identify. Conceptually and in practice it is not impossible to segregate a qualifying silo or grain-storage bin from a nonqualifying barn to which it may be attached or within which it may be located. We do not regard it as significant here that the 40-foot end of a prefabricated metal structure was turned into a storage facility; it was nonetheless a storage facility to the same extent as it would have been if it were freestanding and removed by the distance of a few feet.[5]

We think that respondent is called upon here to make only the same type of allocation and analysis that he undertakes when qualifying equipment and fixtures within a building must be segregated (as "other tangible property") from a nonqualifying building itself. There are many common situations in which the lump-sum contract price for an entire building includes the cost of qualifying apparatus, appendages, or fixtures. Respondent does not urge that an allocation of a portion of the total project cost to the qualifying fixtures is an insuperable burden. We suspect that the identification or segregation of qualifying fixtures spread throughout a building is actually a more elusive task than the segregation of storage facilities which are well defined in area.

Secondly, we note that respondent's own regulations require an allocation (specifically noting the statutory relationship with the depreciation deduction) where section 38 property is used partly in a trade or business, and partly for personal purposes. Section 1.48–1(b)(2), Income Tax Regs. This sort of allocation, which surely is not conducive to clean-cut and exact administrative determinations, was specifically required by the committee reports. See H. Rept. No. 1447, *supra* at 515, and S. Rept. No. 1881, *supra* at 858.

We have yet to deal with the substantive qualification of the cold-storage room as a storage facility. The examples in the regulations of structures which qualify under this heading have already been mentioned sufficiently. The same may be said for the regulatory definition of "building" which adopts a functional test with respect to the pur-

[5] In reality what we are dealing with here is a 40-foot-square, walk-in, cold-storage refrigerator, attached to the end of an adjoining structure.

pose or use of the structure. The committee reports, *supra*, provide, as mentioned, no examples whatever of storage facilities.

Respondent's position regarding the substantive qualification of the refrigerated one-third is definitely not that the storage of boxed apples is not the sort of storage envisioned by the statute. Apparently, if the refrigerated room is to be disqualified on grounds other than the segregation-of-cost argument already dispensed with, that disqualification would necessarily be based upon the proposition that the cold-storage facility provides working space. Respondent has not argued directly that the cold-storage room provides working space, but he urged in connection with his allocation argument that working space was provided in the nonrefrigerated two-thirds of the facility.

In a 1966 revenue ruling respondent emphasizes that the furnishing of workspace is of crucial importance in determining whether a putative storage facility qualifies. That ruling provides in pertinent part as follows:

(5) *Storage facilities.* If property (other than a building and its structural components) is a storage facility used in farming such as the cultivation of the soil or the raising of livestock, and if it cannot be reasonably adapted to other uses, it qualifies as "other tangible property" within the meaning of section 48(a)(1) of the Code, regardless of whether it is a temporary or a permanent facility. Typical storage facilities on farms include grain storage bins, corn cribs and silos. These are all to be distinguished from farm buildings which do not qualify as section 38 property, such as barns, stables, poultry houses and warehouses. All of these contain space within which the farmer works and carries on his farming activities and are ineligible for the credit because they fall within the definition of the term "building." A storage facility, as above illustrated, provides the farmer only storage space but not working space. (Rev. Rul. 66–89, 1966–1 C.B. 7, 8–9.)

The distinction drawn in the above-quoted ruling between working space and storage space appears reasonable and sound. It is in accord with the commonsense approach to the definition of building which was adopted by the regulations and which focuses upon the purpose or use of the space furnished by a structure. See sec. 1.48–1(e)(1), Income Tax Regs., *supra*. The regulations, following the directive of the committee reports, adopt an approach that defines "building" in terms of common understanding and experience.

Applying the "use" approach suggested by the regulations and given sanction by respondent in pertinent revenue rulings, we conclude and hold that the cold-storage refrigerated structure here involved provided only storage space, no working space, and that it qualifies as a storage facility under section 48(a)(1)(B)(ii) of the Code. It was a specialized facility for the cold storage of apples. It had no other function, and the chilly temperatures which undoubtedly prevailed would surely limit its adaptability.

It might be argued that the placing in storage of the apples by men using forklifts is "work," and hence that the refrigerated room furnishes working space. We believe such a hypertechnical *interpreta-tion* to be at odds with the commonsense approach suggested by the committee reports and respondent's own regulations and rulings. If such an interpretation of "working space" is adopted, very few storage facilities will qualify which are not entirely automated; we have already stated our conclusion that a storage facility need not be fully automated in order to qualify. Respondent himself has recognized the qualification of an automated grain-storage facility which was a sizable structure. See Rev. Rul. 67–220, 1967–2 C.B. 46, as ampli-fied by Rev. Rul. 68–122, 1968–1 C.B. 10. And he has also recently recognized the qualification of a sizable potato-storage facility (having the "outward physical appearance" of a building), which was cer-tainly not automated and within which certain employees carried on work, such as removing obstructions in individual potato bins and cleaning the ventilation system. These activities did not disqualify the structure. See Rev. Rul. 68–133, 1968–1 C.B. 36. Respondent con-cluded, we think sensibly, that the activities were incidental to the qualifying storage purpose and function and that the structure did *not provide general working space.*

We likewise conclude here that entrance of employees on forklifts to store and later remove the apples is incidental, subordinate to, and solely in connection with the qualifying apple storage which was the sole use and purpose of the refrigerated facility.[6] The cold-storage facility, including its 2-inch-thick insulation, qualifies as section 38 property.[7] The refrigerated section of the prefabricated structure is "other tangible property" constituting a storage facility which is used in connection with agricultural production. See sec. 48 (a) (1) (B) (ii), I.R.C. 1954.

Finally, we must decide the treatment to be accorded the insulation of the nonrefrigerated two-thirds of the structure. Petitioners appear to urge that the insulation qualifies separately. It would be incumbent upon petitioners to prove under this argument that the insulation was

---

[6] Research facilities are mentioned along with storage facilities in sec. 48(a) (1) (B) (ii) of the Code. The regulatory examples of research facilities are wind tunnels and test stands. Sec. 1.48–1(d) (5), Income Tax Regs. We are confident that most wind tunnels require human ingress and egress to set up the equipment to be tested inside the tunnel. This "work" would surely be incidental to the basic research being carried on, and the wind tunnel would not be deemed to provide working space. The analogy to storage facilities seems clear, and we infer therefrom that human entry and activity which is incidental to a qualifying function is permissible. We perceive no valid reason to disqualify an internally constructed wind tunnel or test stand nor likewise here to disqualify an attached or internal storage facility.

[7] The cold-storage room is basically a giant refrigerator and may arguably qualify, apart from its storage functions, under the regulatory exception for structures which are essentially items of equipment. See sec. 1.48–1(e) (1), Income Tax Regs. We deem it un-necessary to pursue this possibility in light of our conclusion that the room constitutes a qualifying storage facility.

not a structural component of the Quonset hut. Structural components, as well as buildings themselves, are excluded from qualification as section 38 property. Sec. 48(a)(1)(B) of the Code.

We find the stipulated facts wholly insufficient to show that the insulation in the general working area of the Quonset facility is anything other than a permanent covering for the curved walls which results in temperature control or moderation. The term "structural components" is defined by section 1.48–1(e)(2), Income Tax Regs., to include "such parts of a building as walls, partitions, floors, and ceilings, as well as any permanent coverings therefor such as paneling or tiling." The applied insulation here is a permanent covering for the curved interior walls and petitioners have failed to prove that the applied insulation is something other than a structural component. We cannot therefore hold for petitioners on this issue.

In summary, then, we conclude and hold that while the prefabricated Quonset structure may be basically a "building," the refrigerated area attached to one end thereof, including the extra thickness of insulation necessary and applied thereto, qualifies separately as a storage facility. The nonrefrigerated two-thirds of the facility is a "building" which provides general working space and does not qualify for the credit; neither does the insulation applied to the interior of this nonrefrigerated portion, the same being a structural component thereof.

To reflect the required adjustments,

*Decisions will be entered under Rule 50.*

Reviewed by the Court.