JOSEPH PETER HIRL AND MARGARET ELLEN HIRL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hirl v. Commissioner
Docket No. 3629-85.
United States Tax Court
T.C. Memo 1986-289; 1986 Tax Ct. Memo LEXIS 323; 51 T.C.M. (CCH) 1420; T.C.M. (RIA) 86289; July 14, 1986. Joseph Peter Hirl, pro se. Cynthia J. Mattson, for the respondent. WOLFE
MEMORANDUM OF FINDINGS OF FACT AND OPINION WOLFE, Special Trial Judge: This case was heard pursuant to the provisions of section 7456(d) of the Internal Revenue Code. [1]
Respondent determined *324 deficiencies in petitioners' Federal income taxes for 1981 and 1982 in the amounts of $10,925.46 and $8,601.52, respectively. After concessions, the only issue presented for decision is whether petitioners are entitled to an investment tax credit with respect to a house which they purchased and leased back to a developer as a model home for one year. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners resided in Fairfax Station, Virginia, at the time their petition was filed. On July 31, 1981 petitioners purchased a new house (hereinafter "the house") from Pulte Home Corporation (hereinafter "Pulte") for $154,190. The house is located in the Franklin Farms development in Fairfax County, Virginia. It was the "Leesburg" model. On the same day they purchased the house, petitioners leased it back to Pulte for a term of one year. Pulte had the option at the end of one year to lease the house on a month to month basis for a period not to exceed five years. Pursuant to the terms of the lease, Pulte was to use and occupy the house as a model home and/or sales *325 office. In fact, during the term of the lease Pulte used the house as a model for demonstration to prospective customers. The model was furnished to give the appearance of a typical suburban home. It did not house machinery that was part of Pulte's construction process. The house was not used by Pulte as a prototype for the construction of other Leesburg houses nor was it an integral part of the manufacturing process for the construction of other Pulte houses. Instead, the house was used as a display for sales purposes. Pulte could have built the other Leesburg houses in the Franklin Farms development without building the model home. Pulte had no need for construction of the house as a prototype prior to building the other Leesburg houses. Upon terminaton of petitioners' one-year lease of the property to Pulte in July, 1982, Pulte did not renew the lease. Pulte's reason for not renewing was that the Leesburg was a relatively small and inexpensive house, and the market demand in the Franklin Farms development was for larger and more expensive homes. Also Pulte wanted to move its model closer to the entrance to the community. Pulte built only two Leesburg houses at Franklin *326 Farms in addition to petitioners' house and ultimately stopped offering the Leesburg for sale. When Pulte ceased using the house as a model and the lease was terminated, petitioners rented the house as a residential home. The house was a permanent structure with an anticipated life of 50 years. The house on which petitioners claimed an investment credit was a building, a structure enclosing a space within its walls and covered by a roof. On their 1981 return petitioners computed $15,506.01 investment credit with respect to the house. Petitioners claimed a $8,899 investment tax credit in 1981. They carried over the unused portion of the investment tax credit to 1982 and claimed a credit in the amount of $5,090.28 for that period. OPINION In 1981, section 38 provided for a credit against tax for investments in certain depreciable property. The amount of the credit was a percentage of the "qualified investment", and the regular percentage was 10 percent. Section 46(a)(2)(A) and (B). For property with a useful life in excess of 7 years, the "qualified investment" was the entire basis of the property. Section 46(c). Petitioners claimed a 10 percent credit on the house with *327 a useful life in excess of 7 years, and the amount of the credit is not in dispute. The resolution of this case depends on whether the house was "section 38 property". Section 48(a)(1) defines property qualifying for the section 38 investment credit as including: (B) other tangible property (not including a building and its structural components) but only if such property -- (i) is used as an integral part of manufacturing, production, or extraction * * * Under the terms of the applicable statute certain "other tangible property" qualifies for the investment credit, but only if such property does not constitute a "building." If the structure is a building, as defined in section 48(a)(1)(B), it will not be property qualifying for the investment credit. E.g., Consolidated Freightways, Inc. v. Commissioner,74 T.C. 768 (1980), affd. on this point 708 F.2d 1385 (9th Cir. 1983). The term "building", for purposes of section 48, is broadly defined in section 1.48-1(e)(1), Income Tax Regs.: Buildings and structural components thereof do not qualify as section 38 property. The term "building" generally means any structure or edifice enclosing a space *328 within its walls, and usually covered by a roof, the purpose of which is, for example, to provide shelter or housing, or to provide working, office, parking, display, or sales space. * * * The house was used as a model home initially and subsequently has been rented for use as a residence. Plainly it satisfies the description of a "building" quoted above from the regulations. [2]
*329 The regulations exclude from the definition of a "building" a structure which houses property used as an integral part of an activity (manufacturing, production) "if the use of the structure is so closely related to the use of such property that the structure clearly can be expected to be replaced when the property it initially houses is replaced." Petitioners argue that the house they purchased from Pulte and leased back to the company as a model home was used as an integral part of the manufacturing process, i.e., the house was used as a standard or prototype in constructing other Pulte houses of that design. Roger Kamuf, Pulte's vice president of sales and marketing in Northern Virginia during the years in issue, testified convincingly that petitioners' house was not a prototype. Mr. Kamuf stated that it was unnecessary to build petitioners' house in order to build other houses because Pulte had developed plans for the house. He further testified that petitioners' house was never an integral part of the process of construction of other houses, but functioned as a sales office and marketing tool. Section 1.48-1(d)(4), Income Tax Regs., states that property is used as an *330 integral part of a specified activity if it is used directly in the activity and is essential to the completeness of the activity. The evidence in this case establishes that the model home was only a sales aid, was not integral to the construction of homes by Pulte and certainly was not essential to the completeness of the other Pulte homes. Petitioners' reliance on section 1.48-1(e)(1), Income Tax Regs., also is misplaced because the house was "not so closely related to the use of such property that the structure clearly can be expected to be replaced when the property was replaced." The house was not a "special purpose structure". [3] When Pulte ceased using the house as a model home in July, 1982, the structure was not replaced. Rather, the petitioners continued renting the house and it was used as a residential home. *331 The record in this case demonstrates that petitioners' house is a "building" within the meaning of section 48 and is not eligible for the investment credit. Respondent is sustained. To reflect concessions, Decision will be entered under Rule 155.
Footnotes
1. All statutory section references are to the Internal Revenue Code of 1954, as amended and as in effect during the years in issue, except as otherwise noted.↩
2. During the years in issue the applicable statute provided: SEC. 38. INVESTMENT IN CERTAIN DEPRECIABLE PROPERTY. (a) General Rule. -- There shall be allowed, as a credit against the tax imposed by this chapter, the amount determined under subpart B of this part. (b) REGULATIONS. -- The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this section and subpart B. Based on the authority of section 38(b), respondent promulgated section 1.48-1(e)(1), Income Tax Regs., which states: (e) Definition of building and structural components. (1) Buildings and structural components thereof do not qualify as section 38 property. The term "building" generally means any structure or edifice enclosing a space within its walls, and usually covered by a roof, the purpose of which is, for example, to provide shelter or housing, or to provide working, office, parking, display, or sales space. The term includes, for example, structures such as apartment houses, factory and office buildings, warehouses, barns, garages, railways or bus stations, and stores. Such terms include any such structure constructed by, or for, a lessee even if such structure must be removed, or ownership of such structure reverts to the lessor, at the termination of the lease. Such term does not include (i) a structure which is essentially an item of machinery or equipment, or (ii) a structure which houses property used as an integral part of an activity specified in section 48(a)(1)(B)(i) if the use of the structure is so closely related to the use of such property that the structure clearly can be expected to be replaced when the property it initially houses is replaced. Factors which indicate that a structure is closely related to the use of the property it houses include the fact that the structure is specifically designed to provide for the stress and other demands of such property and the fact that the structure could not be economically used for other purposes. Thus, the term "building" does not include such structures as oil and gas storage tanks, grain storage bins, silos, fractionating towers, blast furnaces, basic oxygen furnaces, coke ovens, brick kilns, and coal tipples.↩
3. Under some circumstances special purpose structures are not buildings for purposes of section 38. E.g., Thirup v. Commissioner,508 F.2d 915 (9th Cir. 1974) (Greenhouses); Brown-Forman Distillers Corp. v. United States,499 F.2d 1263 (Ct. Cl. 1974) (Whiskey Maturation Facilities); Brown & Williamson Tobacco Corp. v. United States,369 F. Supp. 1283 (W.D. Ky. 1973) affd. per curiam 491 F.2d 1258 (6th Cir. 1974) (Tobacco Shed). The facts of the present case simply are not analogous to the circumstances in these cases. In Tamura v. United States,734 F.2d 470↩ (1984) the Court of Appeals for the 9th Circuit held that a special purpose onion storage shed was a "building" and noted that the shed easily could have been converted to other uses. The Court summarized its views at pp. 472-473: "No matter how you look at it, inside out, upside down, from the east or west, north or south, the structure, even in common parlance, is a building."