NORTHVILLE DOCK CORP., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 467–66.    Filed April 9, 1969.

---

*Harry Janin* and *James D. Ritter*, for the petitioners.
*Edward H. Hance*, for the respondent.

## OPINION

Under sections 38 and 46 of the Code,[2] a taxpayer is allowed as a credit against the income tax, a specified percentage of the cost basis of qualified property which has been placed in service during the taxable year. The qualified property is called "section 38 property" and is defined in section 48 of the Code.[3] It is petitioner's position that two oil storage tanks, numbers 212 and 413 purchased by it in 1963, qualified as section 38 property and that it properly deducted $20,444.85 as an investment credit on its income tax return for the year ended June 30, 1964.

---

[2] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.
SEC. 38. INVESTMENT IN CERTAIN DEPRECIABLE PROPERTY.
  (a) GENERAL RULE.—There shall be allowed, as a credit against the tax imposed by this chapter, the amount determined under subpart B of this part.
  (b) REGULATIONS.—The Secretary or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of this section and subpart B.

\*   \*   \*   \*   \*   \*   \*

SUBPART B—RULES FOR COMPUTING CREDIT FOR INVESTMENT IN CERTAIN DEPRECIABLE PROPERTY
SEC. 46. AMOUNT OF CREDIT.
  (a) DETERMINATION OF AMOUNT.—
    (1) GENERAL RULE.—The amount of the credit allowed by section 38 for the taxable year shall be equal to 7 percent of the qualified investment (as defined in subsection (c)).

\*   \*   \*   \*   \*   \*   \*

  (c) QUALIFIED INVESTMENT.—
    (1) IN GENERAL.—For purposes of this subpart, the term "qualified investment" means, with respect to any taxable year, the aggregate of—
      (A) the applicable percentage of the basis of each new section 38 property (as defined in section 48(b)) placed in service by the taxpayer during such taxable year, plus
      (B) the applicable percentage of the cost of each used section 38 property (as defined in section 48(c)(1)) placed in service by the taxpayer during such taxable year.
    (2) APPLICABLE PERCENTAGE.—For purposes of paragraph (1), the applicable percentage for any property shall be determined under the following table:

| If the useful life is— | The applicable percentage is— |
|---|---|
| 4 years or more but less than 6 years | 33⅓ |
| 6 years or more but less than 8 years | 66⅔ |
| 8 years or more | 100 |

For purposes of this paragraph, the useful life of any property shall be determined as of the time such property is placed in service by the taxpayer.
[3] SEC. 48. DEFINITIONS: SPECIAL RULES.
  (a) SECTION 38 PROPERTY.—
    (1) IN GENERAL.—Except as provided in this subsection, the term "section 38 property" means—
      (A) tangible personal property, or
      (B) other tangible property (not including a building and its structural components) but only if such property—
        (i) is used as an integral part of manufacturing, production, or extraction or of furnishing transportation, communications, electrical energy, gas, water, or sewage disposal services, or
        (ii) constitutes a research or storage facility used in connection with any of the activities referred to in clause (i). \* \* \*

\*   \*   \*   \*   \*   \*   \*

Such term includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 4 years or more.

Respondent's position is that neither tank constituted section 38 property and therefore no investment credit with respect to either tank is allowable. Respondent does not dispute the size of the claimed deduction if the tanks were in fact section 38 property.

As an ultimate finding of fact, we have determined that both tanks qualified as section 38 property. Section 48, *inter alia*, allows research or storage facilities to qualify as section 38 property if they are used *in connection with* "manufacturing, production, or extraction or of furnishing transportation."

Section 1.48–1(d)(2), Income Tax Regs., defines manufacturing, production, and extraction as follows:

Sec. 1.48–1  Definition of section 38 property.

*     *     *     *     *     *     *

(d)  Other tangible property— * * *

(2)  Manufacturing, production, and extraction. For purposes of the credit allowed by section 38, the terms "manufacturing", "production", and "extraction" include the construction, reconstruction, or making of property out of scrap, salvage, or junk material, as well as from new or raw material, by *processing*, manipulating, *refining, or changing the form of an article, or by combining or assembling two or more articles*, and include the cultivation of the soil, the raising of livestock, and the mining of minerals. Thus, section 38 property would include, for example, property used as an integral part of the extracting, processing, or refining of metallic and nonmetallic minerals, *including oil*, gas, rock, marble, or slate; the construction of roads, bridges, or housing; the processing of meat, fish or other foodstuffs; the cultivation of orchards, gardens, or nurseries; the operation of sawmills, the production of lumber, lumber products or other building materials; the fabrication or treatment of textiles, paper, leather goods, or glass; and the rebuilding, as distinguished from the mere repairing, of machinery. [Emphasis supplied.]

As we pointed out in *Schuyler Grain Co.*, 50 T.C. 265, 272 (1968), on appeal (C.A. 7, Aug. 5, 1968), the above regulation, consistent with the legislative purpose behind the investment credit, defines manufacturing, production, and extraction broadly and is to be liberally interpreted.

As shown in the findings of fact, tank number 413 was both used in connection with and was also an integral part of blending two different products, No. 2 oil and No. 6 oil, in order to obtain No. 4 oil, a product whose characteristics and uses are different from the other two. We find this activity sufficient to constitute the making of property by "changing the form of an article, or by combining or assembling two or more articles."

Respondent contends that petitioner, by blending the oils, was doing nothing more than performing a service, as No. 2, 4, and 6 oil are all derived from the same source—crude oil. However, even if this activity were a form of service, it was also within the scope of manufacturing or production as defined by the regulations, and was

sufficient to qualify tank number 413 as section 38 property. See *Schuyler Grain Co.*, *supra*; also cf. *Murphy* v. *Arnson*, 96 U.S. 131, 134.

Tank number 212 held No. 2 oil, some of which was probably used or held for use in the blending process which took place in tank number 413. Petitioner would have us find on this basis that tank number 212 was thus also used in connection with the manufacture of No. 4 oil, thereby becoming section 38 property.

Whether the connection between tank number 212 and the manufacturing process in tank number 413 is sufficient to accord tank number 212 section 38 treatment, we do not decide. We do find and hold that the tank was substantially used by various oil refineries in connection with their refining process and as such was section 38 property.

Section 1.48-1(d)(2) above defines manufacturing, production, or extraction for purposes of the investment credit as including the oil-refining process. Under section 1.48-1(d)(5)[4] where a refinery uses leased storage tanks in connection with its refining process, the tanks constitute section 38 property in the hands of the tank's owners. Rev. Rul. 68-122, 1968-1 C.B. 10, dealing with corn storage facilities leased by farmers to store harvested corn, recognizes that storage facilities leased by those engaged in manufacturing, extraction, or production can constitute section 38 property where the facilities are used to store the finished product pending its sale. The ruling also provides that the facilities be predominantly used for this purpose before the Service will recognize them as section 38 property.

In the instant case, Northville's No. 2 oil storage facilities were used in part to store refined oil for various oil refineries. Though the evidence shows that tank number 212 was not specifically used only for storing such leased oil, we have found that it was at all times substantially used for this purpose. The evidence introduced into the record established that Northville treated all No. 2 oil on hand as a fungible commodity. Inventory records alone were used to establish which oil on hand belonged to the oil refineries and which belonged to Northville. From these facts, we have found that all of Northville's No. 2 oil storage facilities, including tank number 212, were used in part, but not necessarily predominantly, for storing the refineries' oil. Though Rev. Rul. 68-212 would require a showing by petitioner that tank number 212 was predominantly used to store the refineries' oil in

---

[4] Sec. 1.48-1(d)(5). *Research or storage facilities.* If property (other than a building and its structural components) constitutes a research or storage facility and if it is used in connection with an activity specified in subparagraph (1) of this paragraph, such property may qualify as section 38 property even though it is not used as an integral part of such activity. Examples of research facilities include wind tunnels and test stands. Examples of storage facilities include oil and gas storage tanks and grain storage bins. Although a research or storage facility must be used in connection with, for example, a manufacturing process, the taxpayer-owner of such facility need not be engaged in the manufacturing process.

order to be section 38 property, there is no support for this requisite in the Code or the regulations. The specific language used in section 48 of the Code and the regulations thereunder provides that storage facilities will qualify as section 38 property if the facilities are simply "used in connection with (the prescribed activities)." The term "predominantly used" or a similar term is not used in that section.

Nor can we find that the words "predominantly used" can be implied in that section, for in other provisions relating to the investment credit, the Code does specifically provide for a predominant use test.

For example, section 46, in providing for a reduced investment credit for public utility property, reads as follows:

SEC. 46. AMOUNT OF CREDIT.
  (c) QUALIFIED INVESTMENT.—

   *     *     *     *     *     *     *

  (3) PUBLIC UTILITY PROPERTY.—

   *     *     *     *     *     *     *

    (B) For purposes of subparagraph (A), the term "public utility property" means property *used predominantly* in the trade or business * * * [Emphasis supplied.]

Section 48(a)(3), in excluding property used for lodging from the credit, reads as follows:

SEC. 48. DEFINITIONS; SPECIAL RULES.
  (a) SECTION 38 PROPERTY.—
    (3) PROPERTY USED FOR LODGING.—Property which is *used predominantly* to furnish lodging or in connection with the furnishing of lodging shall not be treated as section 38 property. * * * [Emphasis supplied.]

The fact that a predominant-use test is specifically provided for in these provisions would tend to indicate that if Congress wished to provide a predominant-use test for storage facilities, or section 38 property generally, it would have done so.

In addition, the regulations support the proposition that property need not be used predominantly in a specified activity in order to qualify as section 38 property. The examples under section 1.47–2(e), Income Tax Regs., concerning conversion of section 38 property to personal use, specifically postulate a situation where an automobile is used in a qualifying activity only 40 percent of the time, but is still considered section 38 property to the extent that its basis is subject to depreciation.[5]

---

[5] We note that the above example only allowed sec. 38 property treatment to 40 percent of the property's basis, as only that portion was property for which depreciation was allowable. In the instant case, depreciation was allowable on the entire cost of tank number 212. Also, since the entire tank was used in connection with storage for refineries, the entire tank is used in a qualifying activity. This is not a situation where only a specified physical portion of property qualifies for the credit. See *Robert E. Catron*, 50 T.C. 306 (1968).

We find and hold that, as it pertains to section 48 of the Code, the term "used in connection with" (an activity) does not require a predominant use of property in order to qualify it as section 38 property. Whether or not the use need be more than *de minimis* we need not decide, as the evidence in the instant case indicates that a substantial portion of petitioner's storage facilities were used for storing oil for the refineries. About 20 percent of petitioner's gross profits was attributable to storage tank rental income, a substantial portion of which was attributable to the storage of No. 2 oil. This establishes that oil storage income was more than merely incidental to petitioner's other activities.

Thus we find and hold that tanks number 212 and number 413 were used respectively and in connection with, and as an integral part of, a manufacturing or production activity during their first year in service, as defined by section 48, and consequently were section 38 property. Since both tanks were section 38 property, petitioner was entitled to deduct $20,444.85 as an investment credit with respect to those tanks.

These holdings are dispositive of the issue; consequently we do not discuss petitioner's other alternative arguments, that the tanks were tangible personal property, were used in connection with a transportation business, or were both wholly used in connection with oil refining, regardless of who owned the oil stored.

Because of petitioner's concessions,

*Decision will be entered under Rule 50.*