Palmer Olson and Doris Olson v. Commissioner.
Olson v. Commissioner
Docket No. 2088-69 SC.
United States Tax Court
T.C. Memo 1970-296; 1970 Tax Ct. Memo LEXIS 63; 29 T.C.M. (CCH) 1367; T.C.M. (RIA) 70296; October 22, 1970. Filed Palmer Olson, pro se, Roseau, Minn. R. Burns Mossman, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, JUDGE: Respondent determined a deficiency of $801.45 in petitioners' Federal income tax for the year 1965. As a result of a concession made by petitioner regarding a claimed deduction for public utilities expenses, the sole issue remaining for decision is whether two quonset-type structures constructed on petitioners' farm in 1962 and *64 1965, respectively, constitute "section 38 property" within the meaning of section 48 [1], so as to qualify for the investment credit provided by section 38. Findings of Fact Some of the facts have been stipulated by the parties and are found accordingly. Palmer and Doris Olson (herein called petitioners) are husband and wife, who at the time of filing their petition in this proceeding maintained their legal residence at Roseau, Minnesota. Petitioners timely filed their joint Federal income tax return for the year 1965 with the district director of internal revenue at St. Paul, Minnesota. In their return petitioners claimed an investment credit of $1,403 of which amount $779 relates to the two quonset structures involved herein. 1368 Throughout the year 1965 the petitioners were engaged in the business of farming near Roseau, Minnesota. Their principal farming activity was the production of grain, timothy seed, and bluegrass seed. On their farm petitioners constructed two quonset-type structures. The first of these structures was erected in 1962 with a onepiece *65 concrete slab floor. It is supported by arched 2-inch by 10-inch wood rafters, spaced at 2-foot intervals. The roof is plywood sheeting over which shingles have been attached. The structure is 80 feet long, 36 feet wide, and 20 feet high at the highest point. The only entrance to this facility is through a single large over-head-type door, 12 feet by 12 feet, which is located at the side of the structure. On ever third or fourth rafter, approximately 6 feet above the floor, there is a "saddle" to which a steel cable is attached. The cable is attached to an "eye bolt" which is countersunk into the floor, and by use of a turnbuckle the cable can be tightened. When the cable is attached to the "saddle" and "eye bolt," additional support for the outer structure of the building is provided. The cable can be easily removed from the floor, and because the "eye bolts" are countersunk into the floor, the floor is a smooth unobstructed area (except for the indentations for the "eye bolts") when the cables are not attached. There are no partitions or dividers in the facility and no automated machinery or special equipment located within or incorporated into the structure. The second of these *66 structures was erected in 1965. It, too, has a one-piece concrete slab floor. However, 36 feet from the closed end of the structure is a 2-inch by 6-inch lumber strip imbedded in the floor. Removal of this strip permits installation of a partition 8 feet high at this point. Other than this portable partition, there are no partitions or dividers in the facility and no automated machinery or special equipment located within, or incorporated into, it. This structure is equipped with "saddles," countersunk "eye bolts" and cables as is petitioners' other quonset building. It is supported by arched 2-inch by 10-inch wood rafters spaced at 2-foot intervals and the roof is of 1-inch by 12-inch wooden shiplap over which shingles have been attached. It is 100 feet long by 40 feet wide and 21 feet high at the highest point. The only entrance is through a sliding door, 13 feet by 18 feet, located at one end of the structure. Both of these structures have floors specially designed to be moisture free and have been constructed in a more costly fashion than normally followed in erecting such buildings. In addition to these buildings, petitioners have a third quonset structure, erected in 1950, *67 located on their farm. This structure is of essentially the same type construction as the two structures earlier described, except it has 13-foot by 18-foot doors at each end, a concrete floor laid in sections, and no "saddles" or "eye bolts" in the floor for cables. This latter building is used by petitioners primarily as a machine shed, housing various pieces of farm equipment. The two quonset-type structures in issue were constructed by petitioners for the purpose of storing grains. For approximately 90 percent of the year they are so utilized. However, they can be employed for other purposes. Neither of these structures has been used exclusively for grain storage, and at various times the structure erected in 1965 has been used to store seed, fertilizer, and certain farm equipment. Opinion Section 38 property is defined by section 48(a)(1) which provides, in pertinent part, as follows: Sec. 48. Definitions; Special Rules. (a) Section 38 Property - (1) In General. - Except as provided in this subsection, the term "section 38 property" means - (A) tangible personal property, or (B) other tangible property (not including a building and its structural components) but *68 only if such property - (i) is used as an integral part of manufacturing, production, or extraction or of furnishing transportation, communications, electrical energy, gas, water, or sewage disposal services, or (ii) constitutes a research or storage facility used in connection with any of the activities referred to in clause (i) * * * [Emphasis supplied.] Respondent, pursuant to the broad authority conferred by Congress in section 38(b), Robert E. Catron, 50 T.C. 306, 309 (1968), has promulgated section 1.48-1(e)(1), Income Tax Regs., for the purpose of supplying a definition of the term "building." This section of the regulations provides, in pertinent part, as follows: 1369 (e) Definition of building and structural components. (1) Buildings and structural components thereof do not qualify as section 38 property. The term "building" generally means any structure or edifice enclosing a space within its walls, and usually covered by a roof, the purpose of which is, for example, to provide shelter or housing, or to provide working, office, parking, display, or sales space. The term includes, for example, structures such as apartment houses, factory and office *69 buildings, warehouses, barns, garages, railway or bus stations, and stores. The regulation excludes, however, from the definition of the term "building" such structures as oil and gas storage tanks, grain storage bins, silos, factionating towers, blast furnaces, coke ovens, brick kilns, and coal tipples. In further amplification of the term "building" and as a guide for determining which farm improvements qualify as "section 38 property," respondent has issued Revenue Ruling 66-89, 1966-1 C.B. 7, which states, in pertinent part, as follows: (5) Storage facilities. If property (other than a building and its structural components) is a storage facility used in farming such as the cultivation of the soil or the raising of livestock, and if it cannot be reasonably adapted to other uses, it qualifies as "other tangible property" within the meaning of section 48(a) (1) of the Code, regardless of whether it is a temporary or a permanent facility. Typical storage facilities on farms include grain storage bins, corn cribs and silos. These are all to be distinguished from farm buildings which do not qualify as section 38 property, such as barns, stables, poultry houses and *70 warehouses. All of these contain space within which the farmer works and carries on his farming activities and are ineligible for the credit because they fall within the definition of the term "building." A storage facility, as above illustrated, provides the farmer only storage space but not working space. In Robert E. Catron, supra at 315, we commented favorably upon this ruling, noting that its rationale was in accord with the common-sense approach adopted by the regulations which focuses upon the purpose or use furnished by a structure. The Revenue Ruling, in determining what structures qualify as storage facilities, lays down two important criteria. Principally, the facility may not be reasonably adaptable to other uses, and secondly, it must provide only storage space and not working space. With such criteria in mind, our role is simply to determine whether the quonset-type structures in question fit within the term "building" or qualify as "section 38 property" for the purposes of the investment credit. Although these facilities were constructed by petitioners for the specific purpose of storing seeds and grains, petitioner Palmer Olson readily admitted that *71 they have not been used exclusively for grain storage and are capable of being utilized for multiple purposes. Unlike the refrigerated portion of the quonset-type structure considered in the Catron case, these quonset-type structures are not restricted in function. Neither do they contain refrigeration equipment which would prohibit the open areas from serving as work space. Moreover, these particular quonset-type structures are very much unlike the rectangular, one-story, steel-clad structure containing rows of partitioned storage bins considered in Revenue Ruling 68-132, 1968-1 C.B. 14. The structure discussed in that ruling had a concrete floor with a recessed canal passing through the midsection of each bin that carried potatoes stored therein by water flow from a selected bin to an adjacent but separate processing facility. It also had devices to control the temperature within the facility, numerous specially constructed storage bins, and other specialized equipment which made the facility unsuitable for any other purpose but potato storage. Such restricted utilization is not a characteristic of the structures here involved. Rather, one of the stipulated exhibits *72 demonstrates and emphasizes the adaptability of these structures. In addition, the use of a nearly identical structure as a machine shed by petitioners is clear proof of such adaptability on their premises. It is our view that the specialized facilities designed for the homogeneous storage of commodities or fuels qualifying under section 48(a)(1)(B)(ii) do not include structures similar to those here in issue. Unlike storage bins and oil tanks, when vacant, these quonset-type structures are not unfit for other use. As previously noted, they are available for multiple functional uses. Therefore, it appears to us to be sound and in accord with the common, ordinary understanding of what constitutes a "building" to hold that these quonset-type structures are "buildings" within the definition provided by section 1.48-1(e)(1) of the regulations. Accordingly, Decision will be entered for the respondent. 1370 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩