MERCHANTS REFRIGERATING COMPANY OF CALIFORNIA, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1363–70. Filed September 6, 1973.

*Harry Geist*, for the petitioner.
*Michael A. Menillo* and *Joseph F. Lynch*, for the respondent.

The Commissioner determined a $19,823.50 deficiency in petitioner's 1968 income tax. The only issue for decision is whether a facility used exclusively to store frozen foods was "section 38 property" eligible for the investment credit.

FINDINGS OF FACT

The parties have filed a stipulation of facts which, together with accompanying exhibits, is incorporated herein by this reference.

Petitioner is a wholly owned subsidiary of Merchants Refrigerating Co., a New York corporation. At the time its petition herein was filed, petitioner's principal place of business was at Modesto, Calif. Its Fed-

eral corporate income tax return for the calendar year 1968 was filed with the Internal Revenue Service Center at Ogden, Utah.

Petitioner was engaged in the cold storage warehousing business in 1968. A new cold storage warehouse ("Building F") was constructed during that year on petitioner's Modesto premises and put in service sometime in August of 1968. Building F was depreciable property having a useful life of more than 4 years, as anticipated at the time it was placed in service, and certain of its structural components had expected useful lives of more than 20 years.

Building F had four principal areas. The main part of the structure was a completely enclosed, unpartitioned, rectangularly based freezer room with approximate dimensions of 273 feet by 133 feet by 27 feet (at the highest points of the roof) and a volume of approximately 772,200 cubic feet. Set in the floor of the room were six sets of air-conditioning units. Adjoining the freezer room along one of its longitudinal walls was a 25-foot-wide enclosed railroad dock. Adjoining the freezer room along the opposite wall was an outdoor, canopy-covered truck dock. The canopy was 40 feet wide in the center and 20 feet wide at either end. A 50-foot by 30-foot by 16-foot enclosed room containing refrigeration equipment abutted one of the shorter walls of the freezer room near the railroad dock. Along each of the longitudinal walls of Building F—including the wall separating the freezer room and railroad dock—were four doors, each 7 feet wide and 10 feet high. Building F had "tilt up" concrete walls, concrete floors, and a wood truss roof. The roof and walls had 12-inch and 8-inch insulation, respectively. Total construction costs of Building F amounted to $358,000, exclusive of machinery and equipment costs. Of that amount, $277,132.91 was attributable to the freezer room.

The freezer room was used exclusively to store perishable products belonging to food-processing companies located in the Modesto vicinity. Such companies rented space from petitioner on a "weight of carton or per month basis." In 1968, approximately 75 percent of the available space in the freezer room was rented to John Inglis Frozen Foods, Inc., which operated vegetable-processing facilities in the same industrial complex in which were located Building F and other of petitioner's facilities.

The storage of frozen foods in Building F was an important step in Inglis' production cycle. Inglis commodities were received at Building F only after being processed and prepared for storage by Inglis, picked up by petitioner, and frozen in separate facilities operated or provided by petitioner. Prior to the arrival of the products at Building F, they were packed in either ready-to-market cartons or polyethylene bags placed, in turn, in cubical bulk bins measuring 4 feet along each

dimension, and the cartons or bins were placed on trays. Most of the products kept in Building F were stored in bins. The trays carrying containers of frozen Inglis food were brought to Building F either by forklift truck or by cars running along a railroad siding connecting the facilities of petitioner and Inglis. All trays were moved into the freezer room by means of forklift trucks and then stacked. Frozen goods were thus stored in the freezer room at a temperature of —10 degrees Fahrenheit until such times as Inglis directed that they be returned to it or shipped out to its customers.

Other organizations that rented storage space in Building F included Campbell Soup Co., California Vegetable Concentrates, and Mariani Frozen Foods, each of which occupied approximately 5 percent of the available space during 1968, and Birds Eye Foods, Pet, Inc., Valley Fresh, and the U.S. Department of Agriculture. The products of such other organizations were sometimes frozen by the owner or received at the truck dock rather than the railroad dock, but were otherwise handled at Building F similarly to those of Inglis. Specific areas within the freezer room were not assigned to specific tenants; rather, the allocation of storage space was determined merely by considerations of availability and convenience. All food containers were marked with the owner's name and a description of the product. The merchandise stored in Building F was generally fungible within each particular lot but not fungible as between separate lots.

As indicated above, no commodities were originally frozen or otherwise processed in Building F. The facility was used solely for storage and auxiliary purposes; the activities of petitioner's employees throughout all areas of the structure apart from the small equipment room were limited to receiving and removing the frozen goods and arranging them within the storage area. The principal activity in the freezer room was the operation of forklift trucks. That area was sometimes unoccupied by workers during business hours for periods of 2 hours or more.

The Commissioner disallowed the portion of petitioner's claimed 1968 investment credit attributable to the cost of the freezer room ($277,132.91) for the stated reason that the freezer room was not a "section 38 asset" eligible for the investment credit. The Commissioner also disallowed additional portions of the credit, which petitioner had claimed in respect of certain other items. The parties have agreed that such other items will be treated consistently with the holding as to the freezer room.

OPINION

RAUM, *Judge:* The sole issue is whether the freezer room of Building F was "section 38 property" within the meaning of section 48(a)

(1) of the 1954 Code. As applied to the year in issue (1968), section 48(a)(1) provided, in relevant part, as follows: [1]

SEC. 48. DEFINITIONS; SPECIAL RULES.

   (a) SECTION 38 PROPERTY.—

     (1) IN GENERAL.—* * * the term "section 38 property" means—

      (A) tangible personal property, or

      (B) other tangible property (not including a building and its structural components) but only if such property—

        (i) is used as an integral part of manufacturing, production, or extraction or of furnishing transportation, communications, electrical energy, gas, water, or sewage disposal services, or

        (ii) constitutes a research or storage facility used in connection with any of the activities referred to in clause (i) * * *

    *       *       *       *       *       *       *

Such term includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 4 years or more.

If one were to apply these provisions literally, it would seem that petitioner's structure would not qualify under section 48. To be sure, the freezer room of Building F could easily be considered a "storage facility" under (B)(ii), but the parenthetical clause near the beginning of (B) would seem to disqualify any structure in (ii) if it is a "building." In short, as applied to this case, only those storage facilities which are not buildings would seem to come within (B)(ii). Thus, examples of qualifying storage facilities which are not buildings include "oil and gas storage tanks, grain storage bins, silos." Sec. 1.48–1(e)(1), Income Tax Regs. But the committee reports in respect of the investment credit provisions applicable here make plain that a "warehouse," which in ordinary parlance is regarded as a storage facility, is nevertheless a "building" which cannot qualify as "section 38 property." H. Rept. No. 1477, 87th Cong., 2d Sess., p. A18 (1962); S. Rept. No. 1881, 87th Cong., 2d Sess., p. 155 (1962); see also sec. 1.48–1(e)(1), Income Tax Regs.

Accordingly, if the matter were one of first impression, there would be much force to the Government's position that Building F, plainly a type of warehouse, should, unlike a silo or gasoline storage tank, be regarded as a "building" within the meaning of the parenthetical language of clause (B) and that the freezer room within the structure should therefore fail to qualify as "section 38 property." But the course of decision has run in a different direction, and that result is precluded by at least two prior decisions of this Court holding that a storage

---

[1] These provisions were subsequently amended by secs. 102(a)(2) and 104(a)(1) of the Revenue Act of 1971, Pub. L. 92–178, 85 Stat. 497. Sec. 104(a)(1) replaced the term "storage facility" in sec. 48(a)(1)(B) with the narrower concept of "a facility used * * * for the bulk storage of fungible commodities."

facility may qualify for the investment credit even if it is part of a larger structure having the physical attributes of a "building." *Robert E. Catron*, 50 T.C. 306, 313–314, acq. 1972–2 C.B. 1; *Central Citrus Co.*, 58 T.C. 365, 371.[2] In our judgment, these cases, particularly *Catron*, are not fairly distinguishable. The freezer room, like the storage room in *Catron*, was used solely for storage purposes; it was insulated for such purposes; and no work appears to have been performed there apart from the delivery or removal of the frozen foods stored therein. Since we think that *Catron* and *Central Citrus* are not fairly distinguishable from the present case, they should be followed here unless we were to reexamine them. However, principles of *stare decisis* would seem to argue against that course, particularly since the statutory provisions involved remain applicable only up to the time when the 1971 amendments to the statute take over (see fn. 1 *supra*).

Nor do we accept the Government's argument that the freezer room is not in any event a "storage facility" within (B) (ii) on the ground that "the structure must be used for the bulk storage of fungible goods." Passing the question whether the frozen foods stored in petitioner's facility may be regarded as "fungible," the requirement of fungibility appeared for the first time in the 1971 amendments to the statute (fn. 1 *supra*) which were not retroactive to the year before us.[3] And while one of the committee reports (S. Rept. No. 92–437, 92d Cong., 1st Sess., p. 29 (1971)) indicated that a purpose of the amendment was to "clarify the law regarding * * * storage facilities," the context in which this language was used fails to establish that the committee thought that it was not making any change in the law. We hold, following *Catron* and *Central Citrus*, that Building F

---

[2] Cf. *Brown & Williamson Tobacco Corp.* v. *United States* (W.D. Ky., 31 A.F.T.R. 2d 73–1029, 73–1 U.S.T.C. par. 9317). But cf. *Palmer Olson*, 29 T.C.M. 1367.

[3] Sec. 104(h) of the 1971 Act provided that the amendment in respect of storage facilities was applicable to "property described in section 50" of the 1954 Code. Sec. 50 provides, in relevant part, that "Section 49(a) (relating to termination of credit) shall not apply to property * * * the construction * * * of which * * * is completed by the taxpayer after August 15, 1971, or * * * is begun by the taxpayer after March 31, 1971." We reject the Government's suggestion that the fungibility requirement is applicable retroactively to storage facilities constructed prior to the dates specified in sec. 50. Cf. sec. 1.48–1(d)(5)(ii). Income Tax Regs., added by T.D. 7203, 1972–2 C.B. 12, 23–24, which indicates that facilities used to store boxed fruit might be treated differently under the 1971 legislation from the manner in which such facilities were treated, under prior law, in *Catron*.

The Government's argument that the freezer room was not used as an "integral part" of any of the activities specified in clause (B)(i) of the statute is similarly unavailing. Under (B)(ii), it suffices if a storage facility is used merely "in connection with" any of the specified activities, and the regulations (sec. 1.48–1(d)(5)) make clear that "the taxpayer-owner of such facility need not be engaged in the manufacturing process." Cf. H. Rept. No. 1447, 87th Cong., 2d Sess., pp. A18–19 (1962) ; S. Rept. No. 1881, 87th Cong., 2d Sess., pp. 155–156 (1962) ; *Northville Dock Corp.*, 52 T.C. 68, 74–76, affirmed per curiam 427 F. 2d 164 (C.A. 2) ; *Schuyler Grain Co.*, 50 T.C. 265, 271–272, acq. 1971–2 C.B. 8, affirmed 411 F. 2d 649 (C.A. 7) ; *Sherley-Anderson-Rhea Elevator, Inc.* v. *United States*, 315 F. Supp. 1055, 1058 (N.D. Tex.) ; *F. P. Wood & Son of Elizabeth City, Inc.* v. *United States*, 314 F. Supp. 1205, 1209–1210 (E.D. N.C.) ; Rev. Rul. 71–359, 1971–2 C.B. 62.

qualifies as a "storage facility" that is not a "building" under section 48(a)(1)(B)(ii).

*Decision will be entered for the petitioner.*