**STARR FARMS, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. F–76–9–C.**

United States District Court, W. D. Arkansas, Fayetteville Division.

Dec. 15, 1977.

Emon A. Mahony, Jr., Fort Smith, Ark., for Starr Farms, Inc.

L. Bruce Locke, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., Robert E. Johnson, U. S. Atty., Fort Smith, Ark., for United States.

## MEMORANDUM OPINION

PAUL X WILLIAMS, Chief Judge.

This is a tax refund action brought pursuant to 26 U.S.C. § 7422. This Court has jurisdiction pursuant to 28 U.S.C. § 1346(a)(1).

In its return for the taxable year 1968, Starr Farms claimed a tax "investment credit" of $11,271.56, pursuant to 26 U.S.C. § 38, for environmentally controlled chicken houses. The Internal Revenue Service disallowed the credit and the tax payer paid the full amount on October, 1973. The IRS has denied Starr Farms' claim for refund.

The issue is whether or not the taxpayer's chicken houses constitute "other tangible property (not including a building and its structural components) . . .." within 26 U.S.C. § 48, to qualify for the § 38 tax credit. The United States concedes that the chicken houses would qualify in all respects for the credit, except the United States contends that they constitute buildings and therefore are not eligible for the tax credit.

The parties presented oral evidence to the Court on October 7, 1977. They also admitted into evidence photographs and a written stipulation of certain facts. Both parties consented to the Court's personally viewing the property. On the basis of the stipulation, photographs, oral testimony and view of the property, the Court finds that the chicken houses are buildings, not section 38 property and therefore, the government properly disallowed Starr Farms' claim for investment credit.

The structures in issue are four environmentally controlled chicken houses. They are of a rigid frame construction with permanent sheet-metal roofs and walls. They are structures of a permanent nature. Each chicken house shelters approximately 30,000 layer hens. The buildings are 34½ feet wide and 340 feet long. The walls are approximately 10 feet tall and constructed of corrugated steel. The roof, also made of corrugated steel, slants to an apex approximately twenty feet tall. The only entrances to the building are at each end. The doors are approximately four feet wide and eight feet tall. The buildings are oriented on a east-west direction.

From the outside the structures appear to be extremely long corrugated steel buildings. Though the buildings contain no windows, their absence is not startling. Near each end of the 340 feet-long walls are louvered openings approximately four feet tall and eight feet long. The louvered openings house thermostatically controlled fans. Near the center of the long walls are manually operated fresh-air openings, occupying approximately thirty feet of wall space. Corrugated steel hangs from the top of the openings to completely close the openings in cold weather. In warmer weather the steel curtains can be propped open to admit fresh air.

Upon entering a building, one notices that the structures are well insulated. A flat ceiling approximately 9 feet tall is suspended from the trusses and completely hides the rafters, trusses and pitched roof.

From the ceiling hang two rows of chicken cages which extend nearly the entire length of the building. Due to the weight of the cages which hang from the ceiling, the buildings, wall studs, roof trusses and rafters are closer together than in the usual corrugated steel building. The numerous structural pieces do not detract from the possible functions of the building, but merely make it stronger than is necessary for most corrugated steel buildings.

The floor of each building is a concrete slab which imperceptibly slopes toward one end. Beneath each row of cages the floor is pierced by a long-narrow trough. These troughs aid in the collection and disposal of chicken wastes. It would cost approximately $2,300.00 to fill in the troughs of each building with concrete.

The chicken cages are suspended from rafters. The cages could easily be removed

without damage to building. There are no egg-gathering facilities built into the structure, but the eggs are gathered manually from each cage.

The Court specifically finds that the cages housing the hens could be removed and the building could serve other functions. The cages are suspended by wires or thin steel girders and could easily be removed without affecting the structure of the building.

We find that the buildings could serve other functions. The existing entry ways are quite narrow, but the existing fresh air openings on the side of the buildings could serve as entrances and exits for large machinery. Part of the corrugated steel walls could also be removed without structurally affecting the building.

It would be economically practicable to install lighting within the structures, as electricity for the thermostatically controlled fans has already been supplied to the houses.

The taxpayer produced witnesses who testified that the stench of the houses would in itself preclude any other use of the buildings. Though the odor is stifling within the buildings, we cannot conclude that it precludes all other uses for the buildings after removal of the cages of chickens.

26 U.S.C. § 38 allows as a credit against tax, a certain percentage of the taxpayer's investment in certain depreciable property. 26 U.S.C. § 48 defines the type of property for which the investment credit will be allowed. 26 U.S.C. § 48(a)(1)(B) expressly excludes buildings and their structural components from the definition of "section 38 property." Though the statute has been often amended since 1968, none of the amendments concern the phrase which expressly excludes buildings from qualification for the investment credit.

The regulation in effect during 1968 defined "building" as follows:

(e) Definition of building and structural components. (1) Buildings and structural components thereof do not qualify as section 38 property. The term "build-

ing" generally means any structure or edifice enclosing a space within its walls, and usually covered by a roof, the purpose of which is, for example, to provide shelter or housing, or to provide working, office, parking, display, or sales space. The term includes, for example, structures such as apartment houses, factory and office buildings, warehouses, barns, garages railway or bus stations, and stores. Such term includes any such structure constructed by, or for, a lessee even if such structure must be removed, or ownership of such structure reverts to the lessor, at the termination of the lease. Such term does not include (i) a structure which is essentially an item of machinery or equipment, or (ii) an enclosure which is so closely combined with the machinery or equipment which it supports, houses, or serves that, it must be replaced, retired, or abandoned contemporaneously with such machinery or equipment, and which is depreciated over the life of such machinery or equipment. Thus, the term "building" does not include such structures as oil and gas storage tanks, grain storage bins, silos, fractionating towers, blast furnaces, coke ovens, brick kilns, and coal tipples. 26 C.F.R. § 1.48–1(e)(1).

The current regulation, 26 C.F.R. § 1.48–1.48–1(e)(1), does not change the basic definition contained in the original regulation, but adds the following sentence:

Factors which indicate that a structure is closely related to the use of the property it houses include the fact that the structure is specifically designed to provide for the stress and other demands of such property and the fact that the structure could not be economically used for other purposes.

In this circuit, appearance and function are both to be considered in determining if a structure is a building. *Yellow Freight System, Inc. v. United States,* 538 F.2d 790 (8th Cir. 1976). We find that under both tests, as applied in this circuit, the environmentally controlled chicken houses are buildings.

Each structure is of stationary construction with four walls and a roof. Each structure has doors and openings interspaced in the walls for ventilation. Each structure has a concrete floor. Each structure has substantial dimension. With the exception of the litter trough in the floor, the ventilation system and the exceptional length of each building, there is nothing to distinguish the appearance of the chicken houses from that of other corrugated-steel farm structures. As previously explained, the unusual characteristics of the layer houses are neither so exceptional nor so substantial in relation to the structures as a whole, as to affect the structure's appearance as that of an ordinary farm building.

In *Yellow Freight System, Inc. v. United States*, 538 F.2d 790 (8th Cir. 1976), the Court determined that freight loading docks were buildings. At page 796, the Court stated:

The docks function as buildings. It is true, as the taxpayer argues, that the general purpose of the docks is to expedite the transfer of freight. However, the freight is not expeditiously transferred by the buildings themselves. The docks provide shelter and work space (functions commonly attributed to buildings under both the regulation and legislative history) so that the men and machines therein can expedite the transfer of freight.

.    .    .    .    .

The inspection lanes similarly function as buildings. These facilities are generally used to expedite the fueling, cleansing and inspection for safety and roadability of long-haul vehicles. But the structures themselves do not perform this function. The men and equipment perform this function. The inspection lane facilities, like the docks, provide shelter and work space so that the men and equipment can perform their functions.

The chicken houses in issue also function as buildings. The taxpayer contends that the purpose of the structures is to provide an environment which maximizes the production of eggs. However, they provide shelter and work space so that the chickens therein can produce eggs and employees therein can gather the eggs and tend to the chickens.

At page 797 in note 11, the Court in *Yellow Freight* seemed to limit its application of the functional test so that only structures which primarily provide working space for human beings would be considered buildings. This Court holds that a structure will be deemed to function as a building even if the activity which it shelters is performed solely by machine or animal. To hold otherwise would mean that all structures housing only machines would automatically be deemed non-buildings under the functional test. If this is what the Congress intended, then the exception found in 26 C.F.R. § 1.48–1(e)(ii) for enclosures "so closely combined with the machinery    .    .    ." would be meaningless.

This Court is aware of and has considered the case of *Satrum*, 62 T.C. 413 (1974) in which it was held that Chicken Coops were not "buildings"; but the Court of Appeals of the Eighth Circuit in *Yellow Freight*, 538 F.2d 790 (1976) clarified the buildings functional test and we specifically find that the *Satrum* case does not control the issue here presented. To the contrary, we find that the structures in the case at bar are in truth buildings and not entitled to the tax credit.

The Clerk will prepare a judgment for the United States which dismisses plaintiff's complaint with prejudice.