**Jack McMANUS, individually and as personal representative of the Estate of Dorothy McManus, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 86–C–887–C.

United States District Court, W.D. Wisconsin.

Nov. 3, 1987.

Affirmed 863 F.2d 491.

Denis J. Sieg, McManus Law Offices, Oregon, Wis., for plaintiff.

Thomas D. Sykes, U.S. Dept. of Justice, Washington, D.C., for defendant.

## ORDER

CRABB, Chief Judge.

This is an action for the refund of federal income taxes paid by the plaintiff and his now-deceased spouse for the taxable years 1981, 1982, 1983, and 1984. Jurisdiction is based upon 28 U.S.C. § 1346(a)(1). The defendant has moved for summary judgment.

When the pleadings, depositions, and other materials before the court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. I find the following facts are uncontested for purposes of the summary judgment motion.

### Facts

In 1981, plaintiff McManus caused an airplane hangar to be built at Truax Field, in Madison, Wisconsin. The hangar has stalls for ten single-engine aircraft. The hangar is made of steel, with steel beams, girders, trusses, tie bars, braces, walls, and doors. It is bolted together and supported by turnbuckles. It is approximately 34 feet wide and 200 feet long. It is completely enclosed; it has four walls and a roof.

The hangar's floor is completely paved with concrete or asphalt that is three inches thick. The structure rests on footings or "piers" made of concrete that has been poured into the ground. The hangar is bolted to the concrete footings; it is bolted down at between forty and sixty places.

The hangar has ten large, electrically-operated doors that permit the aircraft to enter and leave. Incorporated into these doors are small, manually-operated, conventional doors that permit persons to come and go. Each stall is separated from adjacent stalls by a metal partition. The partitions are bolted to the rest of the structure. The partitions could be removed by unbolting them.

The hangar has no plumbing, heating system, ventilation system, windows or insulation. Each stall has an electric bulb.

The hangar's function is to protect the aircraft from the elements.

The hangar was constructed by Stevens Systems, Inc., a general contractor. The hangar is not a prefabricated structure; it was constructed by the general contractor on-site. The hangar can be constructed in two weeks.

To move the hangar off the airport premises, it would take a four-person crew two days to remove the ten hangar doors and the related mechanisms. It would take another five days to disassemble the rest of the structure and place it on a trailer for transport. If the structure were merely

being moved a short distance on the airport premises, it might be feasible to jack it up and place it, portions at a time, on a flatbed trailer or wheels. Once the hangars were removed to another location, reassembly would be quicker and easier than the original assembly.

The hangar has an expected life of at least twenty years.

In the years 1981–84 plaintiff and his wife took the position that the hangar qualified for an investment tax credit and as "5–year property" for depreciation purposes. After the Internal Revenue Service rejected this contention, plaintiff paid the tax and commenced this action.

## Opinion

The investment tax credit provisions of 26 U.S.C. § 38 allow a credit that is offset directly against income tax liability. Property which qualifies for the investment credit is known as "section 38 property." "Section 38 property" is defined in section 48, which provides, in part, as follows:

§ 48. Definitions; special rules

(a) Section 38 property—

(1) In general.—Except as provided in this subsection, the term "section 38 property" means—

(A) tangible personal property, or

(B) other tangible property (not including a building and its structural components)....

The Court of Appeals for the Seventh Circuit has held that the Internal Revenue Code "establishes two ways for property to qualify as investment tax credit property: (1) by meeting the definition of 'tangible personal property' or (2) by meeting the definition of 'other tangible property' and qualifying as something other than a building or structural component of a building." *Illinois Cereal Mills, Inc. v. C.I.R.,* 789 F.2d 1234, 1236 (7th Cir.1986).

Plaintiff contends that the hangar qualifies for the investment tax credit either as "tangible personal property," or as "other tangible property," and that the hangar doors and partitions are also "tangible personal property." Defendant contends that the hangar is a "building" within the meaning of section 48(a)(1)(B), and therefore it is neither "tangible personal property," nor "other tangible property." Defendant contends that the hangar doors and partitions are "structural components" of this building.

For the reasons that follow, I conclude that an airplane hangar does not constitute "tangible personal property," or "other tangible property." I conclude also that the airplane hangar doors and partitions do not constitute "tangible personal property."

I will consider in turn each of the contentions plaintiff advances in support of his claim that his hanger, its doors, and its partitions qualify for the investment tax credit.

### 1. Tangible Personal Property

"The term 'tangible personal property' means tangible property except land and improvements thereto, such as buildings or other inherently permanent structures (including any items which are structural components of such buildings or structures)." Treas.Reg. § 1.48–1(c) (26 C.F.R.); H.R.Rep. No. 1447, 87th Cong.2d Sess. 11–12 (1962); S.Rep. No. 1881, 87th Cong., 2nd Sess. 11–12 and 16 (1962). "Thus, buildings, swimming pools, paved parking areas, wharves and docks, bridges, and fences are not tangible personal property." Treas. Reg. § 1.48–1(c) (26 C.F.R.).

Plaintiff suggests that the treasury regulation which excludes from the tax credit "buildings and other inherently permanent structures," effectively *defines* a building as a permanent structure. Thus, plaintiff suggests that a structure which normally may be deemed a "building," may still qualify for the investment tax credit if it is not "inherently permanent." Plaintiff argues that because a four-person crew can disassemble the hangar in less than two weeks, it qualifies as § 38 property.[1] Plaintiff is mistaken in his interpretation.

---

1. Plaintiff relies upon the test adopted by the tax court in *Whiteco Industries, Inc., v. C.I.R.,* 65

Plaintiff relies on two cases, one holding that a mobile home is tangible personal property, and another in which a court determined that § 38 property included a small photo hut, where one delivers film for processing and picks up processed film. *Moore v. Commissioner*, [Dec. 31,554] 58 T.C. 1045 [1972 WL 2532], *aff'd per curiam*, 489 F.2d 285 (5th Cir.1973) (mobile home qualifies as § 38 property because it is not inherently permanent); *Film N' Photos, Inc. v. Commissioner*, [Dec. 35,125(M)] 37 T.C.M. 709 (1978) (photo hut qualifies as § 38 property because it is not inherently permanent).

I find no merit in the use of these analogies to support plaintiff's contention that the ease with which one may move a structure determines whether it is a "building" under 26 U.S.C. § 48. In *Film N' Photos* the court analyzed the booth's permanancy to determine whether it was a building. *Id.* at 713–15. Similarly, in *Moore* the court found that a trailer home which has never been affixed to the ground was not a building. The court recognized that the trailer home had four walls, a roof and a floor, but held that such characteristics were simply indicative of whether a structure is a building. The court relied on the fact that the trailer home was movable to determine that it was tangible personal property. The *Moore* court concluded:

> Tangible assets are thus to be classified as either "personal property" or "other tangible property" depending upon the fashion in which they are affixed to the land and how permanently they are designed to remain in place.

T.C. 664, 672–673 [1975 WL 3184] (1975), in which the court determined that advertising signs are "inherently permanent" and thus not "tangible personal property." The test includes the following questions:

(1). Is the property capable of being moved?
(2). Is the property designed or constructed to remain permanently in place?
(3). Are there circumstances that show that the property will have to be moved?
(4). How substantial a job is removal of the property?
(5). How much damage will the property sustain upon removal?

The mobile homes in *Moore* were placed on concrete blocks, with the wheels left intact. *Moore* at 1047. The blocks had no mortar between them, nor were they set in concrete. The blocks could be pushed out from under the trailers in order to facilitate moving the trailers on their self-contained wheels. *Id.* Although in *Moore* the court did rely on an analysis of the structure's mobility, this consideration is not dispositive by itself. The manner in which the structure is attached to the ground *may* indicate whether it is a building, but permanency is not the sole criterion.

The investment tax credit applies to machinery and equipment. It is designed to increase economic productivity, output, and growth by creating a tax incentive for the purchase of machinery and equipment used to produce goods or run a business. *Illinois Cereal Mills, Inc. v. C.I.R.*, 789 F.2d 1234, 1236 (7th Cir.1986). The test for "other inherently permanent property" focuses on whether machinery and equipment "is contained in or attached to a building." [2] In other words, property that is "likely to accompany the business if it should leave the premises ...," qualifies for the tax credit. *Illinois Cereal Mills, Inc. v. C.I.R.*, 789 F.2d at 1236. Thus, outdoor advertising signs, movable partitions, sewage treatment equipment, wooden ski ramps, house trailers, photo huts, and floating docks have been deemed "removable" and thus qualify as § 38 property. *See Illinois Cereal* at 1236–1237 (citations omitted). By contrast, loading docks, overhead doors, lights, heating systems, air conditioning systems, hot and cold water units, earthen ski ramps, and the Astro Needle amusement ride are permanent, and

(6). What is the manner of affixation of the property to the land?

**2.** Treas.Reg. 1.48–1(c) states:
Tangible personal property includes all property (other than structural components) which is contained in or attached to a building. Thus, such property as production presses, transportation and office equipment, refrigerators, grocery counters, testing equipment, display racks and shelves, and neon and other signs, which is contained in or attached to a building constitutes tangible personal property for purposes of the credit allowed by section 38.

thus do not qualify as § 38 property. *Id.* This test distinguishes between a piece of machinery and equipment, and property which is so intertwined with a building as to disqualify it as a building or its structural component.

Thus, the test of "other inherently permanent structures" does not supplant a preliminary determination whether a structure is a building. As Treas.Reg. § 1.48–1(e) provides, "Generally, buildings and structural components thereof do not qualify as section 38 property." To contend that qualification for the tax credit is determined by analysis of the ease with which one can move what would otherwise be a building, under the *Whiteco* factors, is not in accord with the intent of the tax credit, which is meant to encourage investment in equipment and machinery, and specifically disqualifies buildings and their structural components. Treas.Reg. § 1.48–1(e) establishes that the test for whether property is a building focuses on the appearance of the property, and whether the property functions as a building. *See also Illinois Cereal Mills, Inc. v. C.I.R.,* 789 F.2d at 1238. Accordingly, the structure's appearance and function are also relevant considerations.

A photo hut has four walls, a roof and a floor. It neither looks nor functions like a building. The prefabricated hut is approximately 7 feet tall, ten feet wide and 4 and ½ feet deep. In short, it resembles a building no more than does a tent or a portable toilet. Further, although a photo hut provides shelter, as does a tent or a portable toilet, a hut functions primarily as a retail store grocery counter, which is § 38 property. Treas.Reg. 1.48–1(c).

An airplane hangar both looks and functions like a building. It has four walls, a roof, a floor and several doors. It provides shelter for ten single-engine aircraft. It is comparable to a garage, a warehouse or a barn, which are deemed "buildings" within the meaning of section 48(a)(1)(B). Treas.Reg. 1.48–1(c) (the term building includes such structures as garages, warehouses or barns).

Even if I were to analyze the hangar only under the "inherently permanent" test, a hangar would not qualify for the investment tax credit as removable property. As noted, plaintiff compares the airplane hanger with a photo booth or a mobile home, suggesting that all of these structures qualify for the tax credit because they are not "inherently permanent." There is no merit in this comparison. The small photo hut could be moved in one hour, and the concrete base of the hut was never affixed to the parking lot on which it was located. *Film N' Photos,* 37 T.C.M. at 711. The base merely rested on the surface of the parking lot. The concrete base was moved with the unit. Indeed, the tax court noted that a photo hut was in no way comparable to an ordinary home which was built on a concrete slab, because the hut could be moved within a period of 45 minutes with its base left intact. *Film N' Photos,* 37 T.C.M. at 715. Similarly, a mobile home can be transported readily from site to site simply by hooking it to a truck.

By contrast, the hangar is made of steel; it has steel beams, girders, trusses, tie bars, braces, walls, and doors. The hangar is 34 feet wide and 200 feet long. The hangar's floor is paved completely with concrete or asphalt that is three inches thick. The structure rests on footings or "piers" made of concrete that has been poured into the ground. The hangar is bolted in forty to sixty places to a concrete floor. Although the hangar may be moved, it will involve substantial effort and time.

Finally, I am not persuaded by plaintiff's suggestion that the tax court's analysis of "inherently permanent" in *Moore, Film N' Photos* and *Whiteco* should be extended to apply to a structure simply because it can be taken apart and moved. The mere fact that a structure can be disassembled and moved does not disqualify it as a building. If that were the case, a prefabricated garage, warehouse, or barn would not be considered a building. Such a result would be in clear contradiction to the terms of Treas.Reg. § 1.48–1(e), which provides that the term "building" includes structures such as warehouses, barns and garages. Many buildings can be jacked-up and

moved down the street; this does not mean they are not buildings. Plaintiff's suggestion that this court extend the tax court's analysis of a structure's permanency to all structures which can be disassembled, would stray far from the intended purpose of the investment tax credit to exclude buildings.

Rule 56(e) of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden of proof of an investment tax credit case such as this is on the plaintiff to show entitlement to the investment tax credit. *Illinois Cereal Mills, Inc. v. C.I.R.,* 789 F.2d at 1239. Plaintiff has failed to establish that an airplane hangar is tangible personal property within the meaning of 26 U.S.C. § 48(a)(1)(A).

Plaintiff makes a second stab at qualifying the hangar: he argues that it constitutes "other tangible property."

## 2. Other Tangible Property (Not Including a Building or its Structural Components)

"The test for 'other tangible property' has three distinct components. First, property must qualify initially as tangible property of the type intended by Congress to be covered. Second, it must not be a building. Third it must not be a structural component of a building." *Illinois Cereal Mills, Inc. v. C.I.R.,* 789 F.2d at 1237; 26 U.S.C. § 48(a)(1)(B). The analysis overlaps to some extent the analysis just discussed.

"Congress intended to allow investment tax credit treatment of property, even if that property is 'inherently permanent', if the property relates to the taxpayer's specific business rather than being generally adaptable to most commercial uses. As the Senate report phrased it, Congress wanted to allow investment tax credit treatment of '[a]ssets accessory to the operation of a business.'" *Illinois Cereal Mills, Inc. v. C.I.R.,* 789 F.2d at 1237, citing S.Rep. No. 1881, 87th Cong., 2d Sess. 11–12 (1962). Thus, property such as a heavy immovable machine classified as as a fixture under state law would fail to qualify as "tangible personal property" because it is "inherently permanent," but it may qualify as "other tangible property" if it relates to the taxpayer's specific business.

The test for whether property is a building focuses on the appearance of the property, and whether the property functions as a building. *Illinois Cereal Mill, Inc. v. C.I.R.,* 789 F.2d at 1238. If the property is a structure housing other property, one must determine whether the structure is closely related to the property it houses. The investment tax credit will apply to "(i) a structure which is essentially an item of machinery or equipment, or (ii) a structure which houses property used as an integral part of [a qualified use] if the use of the structure is so closely related to the use of such property that the structure clearly can be expected to be replaced when the property it initially houses is replaced." Treas.Reg. § 1.48–1(e). *See, e.g., Tamura v. United States,* 734 F.2d 470, 471–73 (9th Cir.1984) (pre-fabricated sheds used to store onions are buildings because not closely related to stored property); *Brown–Forman Distillers Corp. v. United States,* 205 Ct.Cl. 402, 499 F.2d 1263, 1269–72 (Ct. Cl.1974) (whiskey maturation facilities are not buildings because they are specially designed for maturing whiskey); *Stuppy, Inc. v. United States,* 454 F.Supp. 1378 (W.D.Mo.1978) (specialty greenhouse is not a building because it is closely related to stored property); *Starr Farms v. United States,* 447 F.Supp. 580 (W.D.Ark.1977) (structures used to house chickens are buildings because they are not closely related to stored property); *Endres Floral Co. v. United States,* 450 F.Supp. 16 (N.D. Ohio 1977) (non-specialty greenhouse is a building because it is not closely related to stored property); *Merchants Refrigerating Co. of Cal. v. C.I.R.,* 60 T.C. 856 (1973) [1973 WL 2607] (refrigeration room is not a building); *Central Citrus v. C.I.R.,* 58 T.C. 365, 370–73 [1972 WL 2547] (1972) ("sweet rooms" used to ripen fruit are not a building

because they are closely related to stored property). These cases demonstrate that the code distinguishes between buildings and structures which are so specialized in relation to the property stored therein that the structure *functions* like, or *essentially is*, machinery or equipment.

Plaintiff and defendants dispute the extent to which an airplane hangar can be adapted to other uses; however, under any view of this dispute an airplane hangar could not be deemed so specialized as to function like a piece of machinery or equipment.

The Senate Report elaborated upon the appearance and function tests:

> The term "building" is to be given its commonly accepted meaning, that is, a structure or edifice enclosing a space within its walls, and usually covered by a roof. It is the basic structure or an improvement to land the purpose of which is, for example to provide shelter or housing or to provide working, office, display, or sales space.

S.Rep. No. 1881, 87 Cong., 2d Sess. 11–12 (1962); *see also* Treas.Reg. § 1.48–1(e).[3]

The airplane hangar at issue both looks and functions like a building. It has four walls, a roof, a floor and several doors. It provides shelter for ten single-engine aircraft. It is comparable to a garage, a warehouse or a barn, and as such, it is a building within the meaning of section 48(a)(1)(B).

### 3. Structural Components

Plaintiff contends that the hangar doors and partitions are tangible personal property because they are not "inherently permanent." Because I have found that the hangar is a building within the meaning of

section 48(a)(1)(B), I find that the doors and partitions of the structure comprise "structural components" of the building. Treas. Reg. § 1.48–1(e)(2) provides that the term "structural component" includes such parts of a building as walls, partitions, floors and ceilings, and windows and doors. Accordingly, I conclude that the doors and partitions do not qualify for the investment tax credit.

### 4. 5-Year Property

Plaintiff contends that the hangar qualifies for accelerated depreciation as "5–year property." Section 168, entitled "Accelerated Cost Recovery System," permits depreciation of certain types of property over period that are shorter than would otherwise be available, yielding larger depreciation deductions in the early years of the useful life of the property. Plaintiff concedes that this court's resolution of the first issue in this case controls the outcome of the second issue. Property which is a "building" for purposes of the investment tax credit cannot be "5–year property" for purposes of accelerated depreciation. Accordingly, defendant's motion for summary judgment on the issue of "5–year property" will be granted.

IT IS ORDERED that the defendant's motion for summary judgment on all issues is GRANTED. The Clerk of Court is directed to enter judgment in favor of the defendant on all issues.

---

**3.** *See Consolidated Freightways v. C.I.R.,* 708 F.2d 1385, 1386–89 (9th Cir.1983) (truck loading docks are buildings because they provide working space); *A.C. Monk & Co. v. United States,* 686 F.2d 1058, 1063–64 (4th Cir.1982) (railroad dock and tobacco storage and receiving rooms are buildings because of appearance and function); *Yellow Freight System, Inc. v. United States,* 538 F.2d 790 (8th Cir.1976) (freight docks

and inspection lanes are buildings by appearance and function); *Starr Farms v. United States,* 447 F.Supp. 580 (W.D.Ark.1977) (structures used to house chickens are buildings because of appearance); *Endres Floral Co. v. United States,* 450 F.Supp. 16 (N.D.Ohio 1977) (nonspecialty greenhouse is a building by appearance and function).